IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LOUIS SANCHEZ,

    Plaintiff,

  -vs-                                                                                    No. Civ. 12-0377 LH/LFG

BNSF RAILWAY COMPANY,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant BNSF's Motion for Summary Judgment on Plaintiff's Ballast-Related Claims ("Motion for Summary Judgment") (ECF No. 66), filed March 14, 2013. The Court, having reviewed the Motion, the accompanying memoranda, and the applicable law, and otherwise being fully advised, finds that Defendant's Motion is well taken and will be **granted**.

Plaintiff Louis Sanchez filed his Complaint to Recover Damages for Personal Injuries ("Complaint") in the Thirteenth Judicial District Court for the State of New Mexico on January 25, 2012. *See* Notice Removal (ECF No. 1), filed Apr. 12, 2012, at ¶ 1, Ex. A ("Compl.") 3-5. Plaintiff served the Complaint on Defendant BNSF Railway Company ("BNSF") on March 13, 2012, and BNSF timely removed the case to federal court, asserting diversity jurisdiction, pursuant to 28 U.S.C. § 1332. Notice Removal ¶¶ 4, 9.

As alleged in his Complaint, on April 4, 2009, Mr. Sanchez was employed by Savage Quality Rail Services. Compl. ¶ 4. That morning, between 6:30 a.m. and 7:00 a.m., he went to refuel a BNSF train at the BNSF Westside Main #8 track in Belen, New Mexico. *Id.* ¶ 6. That section of the railroad track had a steep hill leading to the track and previously had been covered with one-inch grey ballast.[1] *Id.* The grey ballast, however,

> had recently been replaced with a layer of pink ballast approximately the size of baseballs. When the Plaintiff stepped down to check the tank caps to make sure they were tight, one of the large rocks dislodged under his foot, causing him to loose [sic] his footing, fall down the hill and roll under the refueling truck, sustaining serious injuries.

*Id.* Mr. Sanchez claims that BNSF negligently created a dangerous situation

> by placing baseball sized [sic] ballast on a steep surface without packing [it] or installing platforms or other methods to access the trains for refueling and/or service[, and] failed to warn individuals working on their property, including Plaintiff, of the dangerous condition caused by the loose baseball sized [sic] ballast placed alongside the tracks.

*Id.* ¶ 7, 8.

BNSF now moves for summary judgment, arguing that Plaintiff's claims "regarding the use of improper and oversized ballast" are "wholly preempted by federal law." Mot. Summ. J. 1. As a preliminary matter, however, the Court notes that Defendant stated in its Notice of Removal that it did not answer the Complaint in state court. Notice Removal ¶ 1. Having reviewed the record in this matter, it appears that Defendant has not filed an answer in this Court, either; nor has Defendant filed a motion pursuant to FED. R. CIV. P. 12(b), which would toll the time for answering. FED. R. CIV. P. 12(a)(1)(A)(i), (a)(4). Normally, an averment in a complaint that is not properly denied is deemed to be admitted. FED. R. CIV. P. 8(b)(6) ("An allegation . . . is admitted if a responsive

---

1   "Track ballast is the stone or other material placed underneath and around railroad tracks to provide the structural support, drainage, and erosion protection necessary for safe rail travel." *Nickels v. Grand Trunk W. R.R., Inc.*, 560 F.3d

pleading is required and the allegation is not denied.") Additionally, affirmative defenses, such as preemption,[2] that are not timely pleaded may be deemed waived.[3] Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading, a party *must affirmatively state any avoidance or affirmative defense* . . . ." (emphasis added)).

"[T]he primary role of pleadings in the federal system . . . is to provide notice . . . ." *Pepper v. Vill. of Oak Park,* 430 F.3d 805, 812 (7th Cir. 2005) (citing and quoting parenthetically *Conley v. Gibson,* 355 U.S. 41, 48 (1957) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.")). Courts, then, "have applied Rule 8(d)[4] in order to avoid unfair surprise by the party who failed to file a responsive pleading," *Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431, 436 (5th Cir. 1987) (footnote added), and the Rule "is not always strictly applied where the purpose is otherwise fulfilled," *Dixon v. United States Postal Serv.*, 05–cv–01191-BNB-KLM, 2008 WL 707334, at *2 (D. Colo. Mar. 14, 2008). Accordingly, even in the absence of an answer to the allegations in a complaint, a motion for summary judgment can provide "plain notice" of an issue to be litigated, without affecting the rights of the plaintiff. *Trotter*, 818 F.2d at 436.

---

426, 428 (6th Cir. 2009).
2   "'*[O]rdinary preemption*, may be invoked in both state and federal court as *an affirmative defense* to the allegations in a plaintiff's complaint. Such a defense asserts that the state claims have been substantively displaced by federal law.'" *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1203 n. 4 (10th Cir. 2012) (alteration in original) (emphasis added) (quoting *Geddes v. Am. Airlines, Inc.*, 321 F.3d 1349, 1352 (11th Cir. 2003)).
3   In the parties' Joint Status Report and Provisional Discovery Plan, Defendant purports to "incorporate[ ] by reference its defenses from its Answer." (ECF No. 9), filed June 27, 2012, at 4. Not only did Defendant fail to assert the affirmative defense of preemption in that document, but there also, of course, is no Answer in the record.
4   Fed. R. Civ. P. 8(d), which has been revised and renumbered as Rule 8(b)(6), previously provided in part that "[a]verments in a pleading to which a responsive pleading is required . . . are admitted when not denied in the responsive pleading." *Dixon v. United States Postal Serv.*, 05–cv–01191-BNB-KLM, 2008 WL 707334, at *1 (D. Colo. Mar. 14, 2008).

Similarly, "'Rule 8(c)'s core purpose [is] to act as a safeguard against surprise and unfair prejudice,'" and "strict adherence to the pleading requirement is inappropriate when the purpose of the requirement has been otherwise fulfilled." *Ahmad v. Furlong*, 435 F.3d 1196, 1201 (10th Cir. 2006) (quoting parenthetically *Williams v. Ashland Eng'g Co.*, 45 F.3d 588, 593 (1st Cir. 1995) (alteration in original)). Thus, while "the best procedure is to plead an affirmative defense in an answer or amended answer[, and] courts should not permit a party to circumvent . . . restrictions on amendments simply by filing a dispositive motion rather than a motion to amend," the court may consider an affirmative defense first raised in a motion for summary judgment where the movant "intended to raise the defense" and the respondent "thought [the movant] had." *Id.* at 1202-03; *see also Ball Corp. v. Xidex Corp.*, 967 F.2d 1440, 1443-44 (10th Cir. 1992) (though affirmative defense not pleaded, purpose of Rule 8(c), to put plaintiff on notice well in advance of trial of intent to present defense, met by arguing immunity in motion for partial summary judgment three months prior to trial).

Here, although BNSF has not answered the Complaint and has pleaded no affirmative defenses, the Court finds that Plaintiff has not been prejudiced by Defendant's omissions. Additionally, there is no evidence of "undue delay, bad faith, or dilatory motive . . . , or repeated failure to cure deficiencies by amendments previously, allowed" by Defendant, and both parties clearly intended to and did address the issue of preclusion. *Ahmad*, 435 F.3d at 1202-03. Therefore, the Court finds it is appropriate to address the merits of Defendant's Motion for Summary Judgment.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R.

4

C<small>IV</small>. P. 56(a). Thus, pursuant to Rule 56, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, only disputes of facts that might affect the outcome of the case will properly preclude the entry of summary judgment. *Id.* at 248. "All facts and reasonable inferences, however, must be construed in the light most favorable to the nonmoving party." *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (internal quotations omitted).

Initially, the moving party bears the burden of showing that no genuine issue of material fact exists. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial. *Id.* The nonmoving party must go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.*; *Kaus v. Standard Ins. Co.*, 985 F. Supp. 1277, 1281 (D. Kan. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson*, 477 U.S. at 248.

In its statement of Undisputed Material Facts ("UMF"), BNSF proffers various scenarios and many details surrounding Plaintiff's accident, *see* Mot. Summ. J. 2-4, and Mr. Sanchez responds in kind, Resp. Mot. Summ J. 2-3. The single uncontested material fact that is critical to consideration of the preemption issue, however, is that "the allegedly improper and oversized ballast where Plaintiff's injury occurred was part of and immediately adjacent to trackbed, which was used to

5

support the track structure upon which the locomotives were sitting." Mot. Summ. J. 4, UMF 15; Resp. Mot. Summ. J. 3, Resp. Statement Allegedly Undisputed Material Facts ("AUMF") 15 ("Admitted."). BNSF argues that Plaintiff's claim that his fall and resulting injuries were caused by the allegedly non-conforming ballast, *see* Resp. Mot. Summ. J. 2-3, AUMF 4, 5, 6, 9, 13, is preempted by the Federal Railroad Safety Act ("FRSA") and must be dismissed.

As the Sixth Circuit Court of Appeals has explained:

> The FRSA's purpose is "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." *Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 347 (2000) (quoting 49 U.S.C. § 20101). The FRSA authorizes the Secretary of Transportation ("Secretary") to "prescribe regulations and issue orders for every area of railroad safety." *Id.* (quoting 49 U.S.C. § 20103(a)). Under the FRSA's express preemption provision, "[l]aws, regulations, and orders related to railroad safety . . . shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106(a)(1). "A State may adopt or continue in force a law, regulation, or order related to railroad safety . . . until the Secretary of Transportation . . . prescribes a regulation or issues an order covering the subject matter of the State requirement." 49 U.S.C. § 20106(a)(2). A state-law negligence action is "covered" and therefore preempted if a FRSA regulation "substantially subsume[s]" the subject matter of the suit. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993).

*Nickels v. Grand Trunk W. R.R., Inc.*, 560 F.3d 426, 429 (2009) (alterations in original) (parallel citations omitted).

The Secretary has promulgated a regulation addressing the use of ballast:

Unless it is otherwise structurally supported, all track shall be supported by material which will --

(a) Transmit and distribute the load of the track and railroad rolling equipment to the subgrade;

(b) Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress exerted by the rails;

(c) Provide adequate drainage for the track; and

(d) Maintain proper track crosslevel, surface, and alinement.

6

49 CFR § 213.103 (quoted in Nickels, 560 F.3d at 430-31).. The *Nickels* Court concluded that this regulation "substantially subsumes" the issue of ballast size: "[T]he regulation leaves the matter [of ballast sizes for certain types or classes of track] to the railroads' discretion so long as the ballast performs the enumerated support functions." 560 F.3d at 431.

Although not all courts are in agreement on whether state law negligence actions claiming injury caused by slipping on track-supporting ballast are preempted, *see, e.g., Kresel v. BNSF Ry. Co.*, No. 09–CV–2861 (PJS/SER), 2011 WL 1456766, at *6 (D. Minn. Apr. 15, 2011) (comparing *Nickels* with *Grogg v. CSX Transp., Inc.*, 659 F. Supp. 2d 998, 1015-16 (N.D. Ind. 2009)), this Court finds the Sixth Circuit's reasoning persuasive. Through the ballast regulation, the Secretary "has directed railroads to install ballast sufficient to perform key support functions under conditions applicable to the track." *Nickels*, 560 F.3d at 431. This then "effectively narrow[s] the universe of material the railroad may use in a given situation[, and] determines what is reasonable ballast composition and size for a particular track." *Id.*

Plaintiff's negligence claim that the allegedly oversized track ballast caused him to fall and injure himself is therefore preempted. To the extent he now asserts that his claim "is not based solely on defective rocks" but "was more broadly based on BNSF's control exerted over the premises and the actions that he was required to perform for BNSF's benefit," apparently implying that the fact that his injury happened in the course of "refueling in general, or the particular work requirement that [he] place drip pans under locomotives to prevent the ballast from being coated with flammable substance," somehow makes a difference, Resp. Mot. Summ J. 8-9, the Court is unconvinced. Not only are such claims nowhere found in his Complaint, but the cases he cites in support of such a theory are inapposite. The claim here is that oversized ballast caused Plaintiff to

fall when he walked along the side of a locomotive.  "Walking on ballast" was not the sole issue in either *Jones v. BNSF Railway. Co.*, No. C10-05480BHS, 2012 WL 13692 (W.D. Wash. Jan. 4, 2012), or *Balsley v. BNSF Railway. Co.*, No. 3:09-cv-05168-RJB, 2010 WL 4857284 (W.D. Wash. Nov. 22, 2010).  *See Jones*, 2012 WL 13692, at *5 (acknowledging that if the "case involved purely a 'ballast claim,' . . . the regulations and case law, . . could arguably under certain fact patterns preclude Jones's claim, . . . [b]ut 'walking on ballast' is not the sole issue before the Court (and . . . was not the sole issue before the *Balsley* court either).")

Plaintiff's reliance on *Henning v. Union Pacific Railroad Co.*, 530 F.3d 1206 (10th Cir. 2008), and his argument that the ballast at issue here was "nonconforming," are similarly unavailing.  Plaintiff cites *Henning* for the proposition that FRSA preemption does not apply when a railroad violates a federal safety standard of care.  Indeed, in analyzing the effect of the "clarification amendment" to 49 U.S.C. § 20106, titled "Clarification Regarding State Law Causes of Action," the *Henning* Court noted that Congress merely was clarifying that "FRSA preemption does not apply when a railroad violates a federal safety standard of care." *Id.* at 1214-16.  Unlike certain regulations which place "affirmative, ongoing duties on railroad operators to follow the federal safety standards of care," however, the regulations at issue in *Henning* did not create a federal standard of care. *Id.* at 1215.  Rather, they "displaced railroad decision-making authority," *id.* at 1215, thereby preempting state tort claims concerning the adequacy of all warning devices at crossings installed with the participation of federal funds, *id.* at 1213.  Plaintiff appears to contend that because federal funds are not provided to railroads to purchase ballast and the federal government does not direct states to upgrade and improve mainline tracks to certain specifications, as did the regulations regarding crossings in *Henning*, some unidentified "federal safety standard of

care" should be imposed on BNSF in this case. According to Plaintiff, such a standard apparently is to be implied from the engineering standards for ballast promulgated by the American Railway Engineering and Maintenance of Way Association ("AREMA"). This the Court declines to do. As the clarification amendment to the FRSA preemption provision provides, the federal standard of care is "established by a regulation or order *issued by the Secretary of Transportation* (with respect to railroad safety matters)." 49 U.S.C. § 20106(b)(1)(A) (emphasis added) (quoted in *Nickels*, 530 F.3d at 1214). Not only are the AREMA standards not issued by the Secretary, they also "are merely recommendations and are non-binding." *Nickels*, 560 F.3d at 428 n.1. Finally, the Court disregards Plaintiff's unsupported and conclusory argument that "big rocks" may not meet the enumerated criteria in § 213.103.

WHEREFORE,

**IT IS HEREBY ORDERED** that Defendant BNSF's Motion for Summary Judgment on Plaintiff's Ballast-Related Claims ("Motion for Summary Judgment") (ECF No. 66), filed March 14, 2013, is **GRANTED**.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**